IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TINA TRUCHON SAWLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:17-cv-624-GMB |
| | ) | [WO] |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Tina Truchon Sawls applied for supplemental security income and disability insurance benefits under the Social Security Act, alleging a disability onset date of March 1, 2011. Sawls' claim was denied at the initial administrative level. Sawls requested a hearing before an Administrative Law Judge ("ALJ") and the ALJ found her not disabled. Doc. 14-2 at 16. The Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner. Doc. 14-2 at 9. The Commissioner's final decision is subject to judicial review. 42 U.S.C. §§ 405(g) & 1383(c)(3). Sawls subsequently filed a complaint seeking review of the Commissioner's final decision in this court.

Pursuant to 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of the undersigned United States Magistrate Judge. Doc. 8 & Doc. 9. Based upon a review of the evidentiary record,

the parties' briefs, and the relevant authority, the court finds that the Commissioner's decision is due to be AFFIRMED, as set forth below.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. The court

must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Id.* (citing *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A claimant bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant performing substantial gainful activity?
(2) Does she have a severe impairment?
(3) Does she have a severe impairment that equals one of the specific impairments set forth in 20 C.F.R. Pt. 404, Sub pt. P, App. 1?
(4) Is the claimant able to perform past relevant work?
(5) Is the claimant unable to perform other work given her residual functional capacity (RFC), age, education, and work experience?

*See Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III. FACTUAL BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

Sawls was 49 years old on the alleged disability onset date. Sawls has a high school diploma and has worked as a receptionist and secretary.

The ALJ found that Sawls had the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine; bone spur formation in the lumbar and cervical spine; anxiety/panic disorder; and major depressive disorder. Doc.14-2 at 22. The ALJ also found that Sawls has the following non-severe impairments: history of substance

4

abuse and dependence, low vitamin D level, hypertension, shingles, insomnia, hyperlipidemia, and myalgia. Doc. 14-2 at 22. The ALJ found that Sawls' impairments did not individually or collectively meet or equal any of the impairments listed in 20 C.F.R. pt. 404, Sub pt. P, App 1. R. 133.

In considering the RFC, the ALJ gave great weight to the opinion of Robert Estock, M.D., the state agency examiner. The ALJ found that Sawls retained the RFC to perform light work within certain parameters—namely, that she can only occasionally reach overhead and is precluded from climbing ropes, ladders, and scaffold; she can occasionally stoop, kneel, crouch, balance, and climb ramps and stairs; she can occasionally push or pull arm and leg controls or operate foot pedals; she is precluded from working at unprotected heights, working around dangerous machinery, or operating automotive equipment; she is able to understand to carry out detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations; she can perform goal oriented work but not production pace work; she can occasionally interact with the general public, supervisors, and co-workers, but contact with the public and co-workers can only be brief and superficial; she can adapt to minimal changes in the work setting or routine; and she can maintain attention and concentration for up to two hours at one time. Doc. 14-2 at 24–25.

A vocational expert ("VE") testified that a hypothetical person with this RFC could not perform Sawls' past relevant work, but could perform other representative jobs. Doc. 14-2 at 63–64. The VE testified that the hypothetical person could perform jobs such as general office clerk, a "light and unskilled" job that represents approximately 234,700 jobs

in the United States economy; non-postal mailroom clerk, another job the VE classified as "light and unskilled" with 139,300 jobs in the national economy; and companion, which the VE classified as light and semi-skilled. Doc. 14-2 at 64–65. Ultimately, the ALJ concluded that Sawls was not disabled within the meaning of the Social Security Act. Doc. 14-2 at 30.

## IV. DISCUSSION

Sawls presents one issue to the court:[1] whether the ALJ erred at step four of the five-step sequential analysis by not fully incorporating Dr. Estock's opinion in her RFC analysis

---

[1] The Statement of Issues on the first page of Sawls' brief includes this issue and also includes two placeholders for other issues, but provides no content for these other issues. The procedural order issued in this case cautions that issues not presented in the Statement of Issues will not be considered. Doc. 3 at 2. Therefore, because the other purported issues have no content the court has only considered the single issue set out in the Statement of Issues.

If this court were to consider the other issue briefed but not included in the Statement of Issues—namely, that substantial evidence does not support a finding that Sawls could perform a limited range of light work—the court would conclude that this argument is unavailing. Sawls argues that the ALJ's finding that she could perform a reduced range of light work is not supported by substantial evidence because the ALJ cited 20 C.F.R. 404.1567(b), which defines light work as lifting no more than 20 pounds or carrying of objects weighing up to ten pounds. Sawls argues that Dr. Chandler and a nurse practitioner stated that she could lift ten pounds occasionally and five pounds frequently, and notes her own testimony that she could lift five pounds. Sawls argues that no other provider gave an opinion regarding the weight she could lift.

The ALJ provided an extensive discussion of her RFC finding. She declined to give Dr. Chandler's and the nurse practitioner's opinions much weight regarding Sawls' pain and limitations, finding them inconsistent with Chandler's treatment records and the objective medical evidence of normal musculoskeletal examinations. Doc. 14-2 at 27. The ALJ determined that light work is consistent with the minimal abnormalities shown in the x-rays of the spine and the minimal objective musculoskeletal findings through the record. Doc. 14-2 at 27. She noted that Sawls said she could not lift more than five pounds, but found that her statements regarding the intensity, persistence, and limiting effects of her symptoms are not entirely credible. Doc. 14-2 at 25. The ALJ considered Sawls' x-rays of her lumbar, thoracic, and cervical spine, and noted that she has had a number of normal musculoskeletal examinations. Doc. 14-2 at 26. She noted the examinations in which Sawls had no tenderness in her back muscles. Doc. 14-2 at 26.

The Eleventh Circuit, in an unpublished opinion, has analyzed similar facts. *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915 (May 2, 2007). In that case, the plaintiff argued that once the ALJ decided to discredit the doctor's evaluation, the record lacked substantial evidence to support a finding that she could perform light work. The court found, however, that once the ALJ determined that no weight could be placed on the doctor's opinion of the limitations, the only documentary evidence that remained was the office visit records indicating that the plaintiff was managing her respiration problems well, that she had controlled her hypertension, and that her pain could be treated with over-the-counter medication. *Id.* at 924.

6

and not explaining why a portion of his opinion was rejected despite assigning Dr. Estock's opinion significant weight. Having carefully considered the parties' arguments, the record, and the applicable legal authority, and for the reasons set forth below, the undersigned finds that the Commissioner's decision is due to be AFFIRMED for the following reasons.

Sawls challenges the ALJ's determination of the RFC and the ultimate determination that she is not disabled which, in turn, incorporated the limitations in the RFC through the VE's testimony relating to a hypothetical. Sawls points to the ALJ's statement in her opinion that Dr. Estock, the state agency examiner, offered an opinion which was given great weight. Sawls then argues that the ALJ erred because she did not adopt Dr. Estock's opinion that Sawls was limited to following only simple instructions or explain the weight she gave to that opinion.

Dr. Estock filled out a form in which he answered "yes" to the question, "Does the individual have understanding and memory limitations?" He also indicated that Sawls' ability to understand and remember very short and simple instructions is "not significantly limited," her ability to understand and remember detailed instructions is "moderately limited," that Sawls "could understand and remember simple instructions but not detailed ones," and that her ability to carry out detailed instructions is "moderately limited." Doc. 14-3 at 16. Dr. Estock also indicated on the form that Sawls "could carry out simple instructions and sustain attention to routine/familiar tasks for extended periods." Doc.

---

The court held that substantial evidence supported the ALJ's decision. *Id. Green* would lend further support to the court's rejection of Sawls' challenge to the finding that she could perform light work.

14-3 at 16. The ALJ's statement of the RFC is that Sawls can "understand to carry out detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations." Doc. 14-2 at 24–25.

The Commissioner's response to Sawls' argument is that the ALJ's decision shows that she considered the record as a whole and she is not required to discuss explicitly or assign weight to every piece of a medical opinion. The Commissioner also argues that there is no harm in the finding that Sawls could understand and carry out detailed instructions because the VE identified two jobs with Sawls' RFC that are unskilled which only require the ability to carry out simple instructions.

The court begins with the Commissioner's harmless error argument. An incorrect application of the regulations results in harmless error when the correct application would not contradict the ALJ's ultimate findings. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983). Sawls argues that the harmless error analysis is not appropriate where an ALJ has discounted a medical opinion because the court would have to reweigh the evidence, citing *Nyberg v. Commissioner of Social Security*, 179 F. App'x 589, 592 (11th Cir. 2006). The Eleventh Circuit, however, also has held that harmless error analysis may be appropriate even when the ALJ errs in not explaining why weight was given to particular medical opinion. *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008). The *Caldwell* court reasoned that an

> ALJ's failure to state with particularity the weight given different medical opinions is reversible error. When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand.

8

*Id.* (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam); *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). In *Caldwell*, a doctor made recommendations of limitations, but the ALJ did not present those limitations to the VE. *Caldwell*, 261 F. App'x at 190. The court held that "because the limitations that Dr. Bell highlighted would not affect Caldwell's ability to perform one the of jobs that, according to the VE, is appropriate for Caldwell and exists in significant numbers in the national economy, the ALJ's failure to discuss the weight she gave to Dr. Bell's findings was harmless." *Id.*

In light of *Caldwell*, therefore, this court now turns to the issue of whether the limitation Dr. Estock recommended would affect Sawls' ability to perform one of the jobs the VE identified as appropriate and existing in significant numbers in the national economy. *Id.* In this case, the ALJ asked the VE to consider the hypothetical situation of an individual who "could perform or be able to understand, to carry out detail[ed] but uninvolved written or oral instructions." Doc. 14-2 at 62. The VE testified that the individual could perform the specific jobs of general office clerk, which the VE described as "light and unskilled"; non-postal mailroom clerk, also "light and unskilled"; and companion, "semi-skilled." Doc. 14-2 at 64–65.

In her brief, Sawls states that the positions identified by the VE of general office clerk, mailroom clerk, and companion all require a reasoning level of two or three under the definitions provided in the Dictionary of Occupational Titles ("DOT"), and that those

positions therefore require more reasoning ability than following simple directions.[2] Sawls states that a reasoning level of two or higher would preclude jobs with a limitation of simple instructions. Therefore, according to Sawls, applying Dr. Estock's limitation would eliminate all of the positions identified in the ALJ's decision.

The Commissioner points out that the VE described the general office clerk and mailroom clerk (non-postal) positions as "unskilled." Doc. 14-2 at 64–65. "Unskilled work is defined as 'work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . . [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.'" *Anderson v. Astrue*, 2011 WL 3843683, at *5 (S.D. Ala. Aug. 30, 2011) (quoting 20 C.F.R. § 404.1568(a)). The Commissioner argues, therefore, that because unskilled jobs do not require carrying out detailed instructions, the VE's positions are consistent with Dr. Estock's limitations. The Commissioner argues that if the DOT reasoning level for these jobs is not consistent with the VE's "unskilled" testimony, "the VE's testimony 'trumps' the DOT." *Jones v. Apfel*, 190 F.3d 1224, 1229–30 (11th Cir. 1999).[3]

Another judge of this court has determined that a DOT reasoning level of two is consistent with an ability to perform simple tasks. *See Riddle v. Colvin*, 2013 WL 6772419, at *6 (M.D. Ala. Dec. 20, 2013). In *Riddle*, the VE testified that an individual with the

---

[2] The definitions appear in DOT sections 239.567-010, 209.687-026 and 309.677-010. Appendix C to the DOT describes 02 Level Reasoning Development as follows: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."

[3] Although the argument is not made in this case, this court notes that the Eleventh Circuit rejected, in a case in which a petition for certiorari is pending, the argument that Social Security Administration ruling SSR 00-4p superseded *Jones*. *See Baker v. Comm'r*, 729 F. App'x 870, 872 n. 2 (11th Cir. 2018).

RFC to understand and remember "short, simple instructions" could perform two positions which, under the DOT, have a reasoning level of two. *Id.* at *6. The court first concluded that there was no conflict between the VE's testimony and the DOT because a reasoning level of two is consistent with an ability to perform simple tasks. *Id.* The court alternatively assumed a conflict but nevertheless found that "the VE's testimony trumps any inconsistent provisions of the DOT." *Id.* This reasoning is not unique to *Riddle*. *See, e.g.*, *Anderson*, 2011 WL 3843683, at *3 (finding no actual conflict between the VE's testimony that a plaintiff with a limitation of simple tasks involving simple instructions could perform the cited unskilled jobs and the applicable DOT, but also finding that, even if there is a conflict, the ALJ is entitled to rely on a VE's testimony that conflicts with the DOT).

Applying this persuasive reasoning in this case, the court finds that the jobs identified by the VE are not precluded by Dr. Estock's limitations. Dr. Estock recommended a limitation of simple instructions for Sawls. The VE applied the ALJ's limitation of following detailed but uninvolved directions and identified two jobs which the VE characterized as "unskilled." Unskilled jobs are defined in the applicable regulations as requiring simple duties. 20 C.F.R. § 404.1568(a). One of those jobs, general office clerk, has a reasoning level of two (DOT § 239.567-010) and is consistent with simple tasks of an unskilled position. *See Riddle*, 2013 WL 6772419, at *6. Even if there is a conflict between the applicable DOT reasoning definition and the VE's testimony that the general office clerk and non-postal mail clerk jobs are "unskilled" jobs, the VE's testimony trumps the DOT. *Jones*, 190 F.3d 1229–30. And because they are unskilled jobs, the two clerk positions are jobs Sawls can perform even accepting Dr. Estock's limitation

11

to only simple directions. *Riddle*, 2013 WL 6772419. Therefore, even if the ALJ erred in using a different limitation than that recommended by Dr. Estock without explaining the weight given to Dr. Estock's opinion on that issue, that error is harmless error because the limitation that Dr. Estock highlighted would not affect Sawls' ability to perform at least one of the unskilled jobs identified by the VE as existing in significant numbers in the national economy. *See Caldwell*, 261 F. App'x at 190.

## V.  CONCLUSION

Based on the foregoing, it is ORDERED that the decision of the Commissioner is AFFIRMED.

A final judgment will be entered separately.

DONE on the 3rd day of December, 2018.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE